# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

DARREN J. BROWN, JR.,

                                                                  Case No.: 9:25-cv-81571-BER

    Plaintiff,

v.

BRIGHTLINE TRAINS FLORIDA LLC, and
FORTRESS INVESTMENT GROUP, LLC

    Defendants.

_____/

## DEFENDANTS, BRIGHTLINE TRAINS FLORIDA, LLC AND FORTRESS INVESTMENT GROUP, LLC'S   MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

      Defendants, Brightline Trains Florida LLC and Fortress Investment Group LLC, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), move to dismiss this action as the Court lacks subject matter jurisdiction in this case regarding the claims brought under the Federal Employers' Liability Act, 45 U.S.C. §51, *et seq.*, and the claims brought under the Family and Medical Leave Act ("FMLA") fail to state a claim upon which relief may be granted.  The grounds upon which this Motion is based and the substantial matters of law to be argued are as follows:

1. Plaintiff, Darren Brown has filed this action seeking "Declaratory Relief that Plaintiff was an 'employee' of Brightline within the meaning of the Federal Employers' Liability Act ("FELA") and damages "in no event less than $60,000,000."

2. This Court lacks subject matter jurisdiction over the FELA claims alleged in Counts I through IV and VII of the Complaint.

3. Plaintiff has filed, with attachments, a 229-page Complaint. The Complaint completely lacks a "short and plain statement of the nature of the action" as required by Fed.R.Civ.Pro. 8(a)(2). In short, Plaintiff, a former employee of Brightline Trains Florida, LLC, alleges that he is entitled to FELA compensation because he "struck and killed pedestrians along the Brightline corridor" while working as a train crew member.

4. Plaintiff fails to avail himself of Florida's workers' compensation scheme and attempts to assert that Brightline is liable under the FELA.

5. As alleged in the Complaint and confirmed in the Affidavit of Michael Lefevre attached as Exhibit "1", Brightline operates passenger train service from South Florida to Orlando, Florida. Liability under the FELA extends only to common carriers by railroad engaged in interstate commerce. Brightline is excluded from FELA applicability because it is an "urban rapid

transit system" operating solely within the State of Florida. An "urban rapid transit system" is not a "railroad" for FELA purposes.

6. As Brightline is not a railroad for FELA purposes, this Court does not have federal subject matter jurisdiction over Plaintiff's FELA claims which must be dismissed as a matter of law.

7. With respect to the FMLA claims (Counts V and VI of the Complaint), Plaintiff has alleged in Paragraphs 73 through 80 of the Complaint and through Exhibit 7 attached to the Complaint that on September 23, 2023, Brightline failed to allow Plaintiff to take FMLA leave as approved by his physician in violation of the FMLA.

8. While Brightline vehemently contests Plaintiff's allegations set forth in Counts V and VI of the Complaint, Plaintiff's action as pled on its face is time-barred under the two-year FMLA statute of limitations.

9. Additionally, in Count VI of the Complaint, Plaintiff has failed to allege an "adverse employment" action required to properly plead a *prima facie* case for FMLA discrimination.

10. Finally, Plaintiff has filed a shotgun pleading incorporating each preceding count into each new count creating a confusing mix of irrelevant facts and legal theories. With the exception of Count I, Plaintiff has failed to

distinguish which claims are brought against each defendant. As to Counts V and VI, there are no allegations that Fortress, whose affiliate manages funds that have invested in Brightline, committed any violations of the FMLA and to the extent Plaintiff is attempting to pursue FMLA claims against Fortress, these claims should be dismissed.

## MEMORANDUM OF LAW

**Brightline is not a Common Carrier by Railroad Engaged in Interstate Commerce**

Brightline Trains Florida, LLC is a private intercity passenger rail service that operates between Miami and Orlando, Florida. (*See Affidavit of Michael Lefevre*). Plaintiff contends Defendants' negligence caused injury to the Plaintiff related to his trains striking and killing pedestrians on the railroad tracks, and he has filed this lawsuit against Brightline and Fortress for alleged violations of the FELA.

Plaintiff alleges that this Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1331 and 45 U.S.C. §56, claiming that Brightline operates "a common carrier by railroad engaged in commerce." (Complaint para. 22). Plaintiff, however, has missed a critical portion of the United States Code that he fails to quote:

4

> Every common carrier by railroad **while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations,** shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . .

45 U.S.C. §51 (emphasis added).

Although Plaintiff recites the phrase "engaging in commerce between any of the several states" in paragraph 26 of the Complaint, Plaintiff claims only that subject matter jurisdiction is applicable because "Brightline falls within this class of carriers because it operates high-speed passenger trains over FRA-regulated infrastructure." Brightline is not a common carrier by "railroad" as required by FELA but is instead an "urban rapid transit system" excluded from the FELA.

In the attached affidavit of Michael Lefevre in support, Brightline has confirmed that it:

(a)   only operates passenger trains connecting Miami and Orlando with stops in West Palm Beach, Boca Raton, Fort Lauderdale and Aventura, all of which are located in the state of Florida;

(b) Brightline does not engage in freight service;

(c) Brightline does not transfer freight; and

(d) Brightline does not connect with any other carrier by rail.

5

This Court is a "court of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (internal quotation and citation omitted). It "possesses only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." [**2617] *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994), *United States v. Merlino*, 785 F.3d 79, 82 (3d Cir. 2015). Thus, if this Court finds it lacks subject matter jurisdiction over Plaintiff's action, "the only function remaining . . . is that of announcing the fact and dismissing the cause*." Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); see also Fed. R. Civ. P. 12(h)(3).

Defendants seek dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Challenges to subject matter jurisdiction under Rule 12(b)(1) may be regarded as either facial or factual. *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Facial challenges "contest the sufficiency of the pleadings" as a basis for the court's subject matter jurisdiction. *S.D. v. Haddon Heights Bd. of Educ.,* 833 F.3d 389 n.5 (3d Cir. 2016); *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Turicentro, S.A. v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002)).

A court reviewing such a challenge may "only consider the allegations of the complaint," which it takes to be true, and "documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (internal quotation marks omitted).

In contrast, Defendants' challenge to subject matter jurisdiction here is factual. Defendants contest the truth of Plaintiff's allegation that original federal question jurisdiction exists because Brightline is a common carrier by railroad subject to FELA. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014); *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991) (whether FELA applies is a legal determination that depends on the resolution of underlying factual questions).

Because Defendants' challenge to subject matter jurisdiction is factual, "no presumptive truthfulness attaches to [the] [P]laintiff's allegations," *Mortensen,* 549 F.2d at 891, and this Court may "weigh and 'consider evidence outside the pleadings.'" *Constitution Party of Pa.,* 757 F.3d at 358 (*quoting Gould Elecs. Inc.*, 220 F.3d at 176).

More so, Plaintiff bears the burden of proving that subject matter jurisdiction in fact exists, *Mortensen*, 549 F.2d at 891, and must meet this burden by supplying "competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) (internal citation omitted). Plaintiff cannot meet this burden.

Enacted in 1908, the FELA provides the exclusive source of recovery for employees of interstate railroads injured or killed during the course of their employment. *Sinkler v. Missouri Pacific R.R. Co.*, 356 U.S. 326, 329-30 (1958) (internal citations omitted).

For Plaintiff to establish a FELA violation claim, Plaintiff must show that: (1) Brightline is a common carrier by railroad engaged in interstate commerce; (2) Plaintiff was employed by Brightline with duties furthering such interstate commerce; (3) Plaintiff's injuries were sustained while he was so employed; and (4) the injuries were the result of Brightline's negligence.

Although Plaintiff can meet none of the required elements in this case, Brightline is not a "railroad" within the meaning of the Act and therefore all of Plaintiff's other allegations fail and the FELA claims must be dismissed.

The FELA does not define "railroad" but "[i]t is well-settled, since the earliest days of the Act, that street railway companies (as opposed to ordinary railroads) do not come within the purview of FELA." *Strykowski v. NE. Illinois*

8

*Reg'l Commuter R.R. Corp.,* 1994 U.S. App. LEXIS 16236, at 19-20 (see also 30 F.3d 136, (7th Cir. 1994)), (*citing Washington Ry. & Elec. Co. v. Scala*, 244 U.S. 630, 637-38 (1917)) (stating that ordinary railroad, as distinguished from street railway company, came within FELA); *McKenna v. Washington Metro. Area Transit Auth.*, 670 F. Supp. 7, 9 (D.D.C. 1986), *aff'd*, 829 F.2d 186 (D.C. Cir. 1987)) (identifying a long-recognized exception within FELA for "street railways"); *Mangum v. Capital Traction Co.*, 39 F.2d 286, 287 (D.C. Cir. 1930)) (stating that street railways are not included within the classification of "common carriers by railroad" as used in FELA, per "the natural import of the terms therein employed, from the history of the legislation, and from various expressions to be found in Supreme Court opinions.")).

The distinction between a street railway and an ordinary interstate railroad has been explained in terms of the functions and services performed. For example, in *Omaha & Council Bluffs Street Railway Co. v. Interstate Commerce Com'n*, the Supreme Court, interpreting the Interstate Commerce Act of 1887, stated that: Adopted for more modern times, the difference between a "street railway" and a "railroad," has been applied to "urban rapid transit systems." *See Strykowski*, *Id.* at 23 ; *see also Brooks-Powers v. Metro. Atlanta Rapid Transit Auth.,* 579 S.E.2d 802, 806 (Ga. App. 2003)("But urban rapid transit systems like

9

MARTA [(the Metropolitan Atlanta Rapid Transit Authority)] are exempted from FELA").

In *Chicago Transit Auth. v. Flohr*, the United States Court of Appeals for the Seventh Circuit provided an extended discussion of the differences between "urban rapid transportation systems" and "railroads," within the context of the Railroad Safety Act and oversight of the Chicago Transit Authority by the Federal Railroad Administration and the Secretary of Transportation. 570 F.2d 1305 (7th Cir. 1977). The court concluded, based on congressional intent and legislative history, while also observing industry use, common usage, and dictionary definitions, that an "urban rapid transit system" is simply not a "railroad." *See id.* at 1306-11.

In *Felton v. SE. Pennsylvania Transp. Auth.*, plaintiff, a maintenance trainee laborer for SEPTA's City Transit Division (i.e. subway and elevated lines), sued SEPTA under FELA to recover compensation for work-related injuries. 757 F. Supp. at 625. The *Felton* district court rejected plaintiff's FELA claim and granted SEPTA summary judgment, noting that SEPTA's at-issue City Transit Division was not a "common carrier by railroad" subject to FELA. In doing so, the district court acknowledged the distinction between ordinary railroads subject to FELA and street railroads that are not, observing: [A] street

10

railway is local, derives its business from the streets along which it is operated, and is in aid of the local travel upon those streets; while a commercial railway usually derives its business, either directly or indirectly, through connecting roads, from a large area of territory, and not from the travel on the streets of those cities . . . along which they happen to be constructed and operated. 757 F. Supp. at 627 (internal citations and quotations omitted).

On appeal, the United States Court of Appeals for the Third Circuit affirmed the *Felton* district court's determination. 952 F.2d 59, 62 (3d Cir. 1991). The Third Circuit held that SEPTA's City Transit Division did not constitute a common carrier by railroad under FELA because it was limited to rapid urban rail transportation, which was not intended to come under FELA's coverage of common carriers by railroad. See also *Mangum*, 39 F.2d at 287-88 (declining to apply FELA to street railway company even when rail extended from Washington D.C. into Maryland). More so, focusing on the Northeast Rail Services Act of 1981 (45 U.S.C. §§ 744a, 1102(2), 1104), amendments to the Rail Passenger Service Act of 1970, and the Federal Railroad Safety Act ("FRSA") (45 U.S.C. §§ 421 et seq.), the Third Circuit in *Felton* provided an in-depth discussion of legislation affecting commuter railroad transportation, which revealed a consistent congressional intent to not subject rapid urban

11

transportation systems to FELA, but rather to distinguish between urban rail transportation and interstate railroads. 952 F.2d at 62. The Third Circuit noted that, "[i]n a 1988 amendment to [F]RSA, the term 'railroad' was defined to exclude 'rapid transit operations within an urban area that are not connected to the general railroad system of transportation.'" *Id.* at 63 (quoting 45 U.S.C. § 431(e) (Supp. 1991)).

In *Strykowski v. Northeast Illinois Regional Commuter R.R. Corp.*, 1994 U.S. App. LEXIS 16236, *27, the Seventh Circuit Court of Appeals addressed the interstate commerce prong of FELA coverage. The court held the central question was whether the employer was a participant in a continuous interstate journey of passenger or freight across state lines by rail. In this case, it is undisputed that Brightline does not participate in the transportation of freight or passengers across state lines and does not interchange or transfer passengers to railroads that operate across state lines.

The specific issue before the Court was addressed by the Surface Transportation Board in 2012 at the inception of the Brightline project. At that time, Brightline's predecessor-in-interest, All Aboard Florida requested legal confirmation that the proposed rail line at issue in this case was not part of the interstate rail network and, thus, did not require regulatory approval from the

12

Surface Transportation Board ("STB"), a federal government agency tasked with the responsibility of approving rail line construction for interstate carriers. In STB Docket Number FD 35680 attached as Exhibit "2", the Surface Transportation Board determined that the Brightline rail line constructed and operated entirely within the state of Florida was not part of the interstate rail network and was not subject to STB jurisdiction.

**Plaintiff's FMLA Claims are Barred Under the Two-Year Statute of Limitations**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 *(2007)*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 *(3d Cir. 2009)*

13

(citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id. at 210-11*.

Count V of the Complaint involves a claim for FMLA interference and Count VI involves a claim for FMLA Discrimination (Retaliation). Plaintiff has alleged in Paragraphs 73 through 80 of the Complaint and by incorporation of Exhibit 7 attached to the Complaint that on September 23, 2023, Brightline failed to allow Plaintiff to take FMLA leave as approved by his physician in violation of the FMLA.

Pursuant to 29 U.S.C. §2617(c)(1), the statute of limitations for an ordinary FMLA claim is two years[1]. *See, Bush v. Special Sch. Dist. St. Louis County*, 2008 U.S. Dist. LEXIS 45185 (E.D. Mo. 2008)(two year statute of limitations applies where the plaintiff applied for leave, was entitled to leave and had her request rejected)

While Brightline vehemently contests Plaintiff's allegations set forth in Counts V and VI of the Complaint, Plaintiff's action as pled on its face is time-barred under the two year FMLA statute of limitations as this case was not filed

---

[1] There are no willful violations of the FMLA alleged in the Complaint.

until December 16, 2025 or more than two years after Plaintiff's leave was allegedly denied in violation of the FMLA.

**Plaintiff's FMLA Retaliation Claim (Count VI) Does Not Allege an Adverse Employment Action**

To show a *prima facie* case for FMLA retaliation, a plaintiff must show that: "(1) she engaged in a statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020). Under the FMLA, "an employee must demonstrate her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right." *Sutherland v. Glob. Equip. Co.*, 789 F. App'x 156, 160 (11th Cir. 2019) (per curiam) (citing *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (alteration added)). "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (quoting *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)). "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly

unrelated.'" *Jones*, 854 F.3d at 1271 (quoting *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013)).

An adverse employment decision is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment. *Cardenas v. Massey,* 269 F.3d 251, 263 (3d. Cir. 2001) (citing *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1299 (3d Cir. 1997) (abrogated on [*12] other grounds)); *Fleck v. Wilmac Corp.,* 2012 U.S. Dist. LEXIS 42087, 2012 WL 1033472, at *14 (E.D. Pa. Mar. 27, 2012). To show causation, plaintiffs must show either "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity; (2) a pattern of antagonism coupled with timing to establish a causal link." *Budhun v. Reading Hosp. and Medical Ctr.,* 765 F.3d 245, 258 (3d Cir. 2014) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007)).

In this case, Plaintiff alleges that FMLA leave was denied, but does not allege an adverse employment action was taken against him sufficient to plead a *prima facie* case of retaliation/discrimination.

**Plaintiff's Shotgun Pleading Fails to Allege Fortress was responsible for any alleged FMLA violation**

In Plaintiff's Complaint, it is not entirely clear which allegations correspond to each cause of action as preceding paragraphs are merged in later

paragraphs. Additionally, other than Count I which is labeled, the other counts do not identify which defendants the claims apply to.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). A few types of shotgun pleadings exist, but "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. For example, one type of shotgun pleading occurs where each count in a multi-count complaint "adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321.

The Court has discretion to dismiss a *pro se* party's complaint for being a shotgun pleading. *Gendron v. Connelly*, No. 22-13865, 2023 U.S. App. LEXIS 11593, 2023 WL 3376577, at *2 (11th Cir. May 11, 2023) ("[A]lthough [plaintiff] was proceeding *pro se*, it was well within the district court's discretion to dismiss the amended complaint as a shotgun pleading."); *Halbig v. Lake Cnty.*, No. 23-11875, 2024 U.S. App. LEXIS 2844, 2024 WL 470420, at *2 (11th Cir. Feb. 7, 2024) (holding that district court can dismiss complaint on shotgun

pleading grounds under its "inherent authority to control its docket and ensure the prompt resolution of lawsuits" (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

In addition to being a defective shotgun pleading, the Court should dismiss the FMLA claims against Fortress because, for the reasons sated above, they are time-barred, and because there are no allegations that Fortress violated the FMLA. Nor could there be, since Plaintiff was an employee of Brightline (which is owned by funds managed by Fortress), and not Fortress.

**Conclusion**

For the foregoing reasons, Brightline and Fortress, respectfully request that this Court grant the Motion to Dismiss for Lack of Subject Matter Jurisdiction as to the FELA claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and the FMLA claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

This 9th day of January, 2026.

Respectfully submitted,

MILTON, LEACH, WHITMAN, D'ANDREA, ESLINGER, COLLINS & CLOSE, P.A.

*s/ Eric L. Leach*
Eric L. Leach
Florida Bar No. 745480
eleach@miltonleach.com
C. Ryan Eslinger
Florida Bar No. 634859
reslinger@miltonleach.com
3127 Atlantic Blvd.
Jacksonville, FL 32207
Telephone: (904) 346-3800
Counsel for Brightline Trains Florida LLC and Fortress Investment Group, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this day, the undersigned counsel served a true and correct copy of the foregoing Motion to Dismiss upon counsel for Plaintiff by email and by Statutory Electronic Filing as follows:

Darren J. Brown, Jr.
931 Village Blvd, Suite 905-438
West Palm Beach, FL 33409
DarrenBrown@advantagefc.com
(708) 705-3214

This 9th day of January, 2026.

                                                                                                                 _s/ Eric Leach_          
                                                                                                                  Eric L. Leach, Esq.