UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION



CASE NO.: 9:25-cv-81571-BER

DARREN J. BROWN, JR.,
Plaintiff,

v.

BRIGHTLINE TRAINS FLORIDA LLC, and
FORTRESS INVESTMENT GROUP LLC,
Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

1. Plaintiff Darren J. Brown, Jr., appearing pro se, respectfully submits this response in opposition to Defendants' Motion to Dismiss (ECF No. 11). Plaintiff requests that the Court deny the motion in its entirety.

2. This response uses numbered paragraphs and subheadings to align with the structure of Defendants' filing and to promote clarity for the Court.

3. Plaintiff includes clear legal standards, references to public records, and newly available exhibits to show Brightline is a federally regulated, mixed-use intercity passenger railroad covered by FELA.

    **Key Exhibits Summary**

    - **Exhibit 1 – FRA Temporary PTC Outage Letter (Dec. 2, 2025):**

        A formal letter signed by Brightline Vice President Michael Lefevre submitted to the FRA stating that Brightline operates a "Freight, Passenger, Mixed" corridor. It confirms

1

shared daily use by Brightline passenger trains, Florida East Coast Railway (freight), and SFRTA (commuter Tri-Rail). This directly contradicts Defendants' claim that Brightline is an isolated, intrastate-only operation and supports Plaintiff's assertion of federal rail integration.

- **Exhibit 2 – Florida House Bill 867 (2025):**

  A state law codifying Brightline's joint operational role within the Coastal Link corridor alongside FECR and SFRTA. The bill recognizes Brightline as a statutory participant in shared-use rail infrastructure, affirming shared responsibilities and liability. This undermines Brightline's argument that it operates independently or without shared federal obligations.

- **Exhibit 3 – Declaration of Darren J. Brown, Jr.:**

  A sworn declaration under 28 U.S.C. § 1746 describing Plaintiff's direct exposure to multiple fatal train strikes while employed as a conductor. The declaration details Brightline's unsafe post-incident procedures, including being ordered to inspect crash scenes on foot without protective gear, lack of trauma relief, and subsequent denial of FMLA leave following a PTSD diagnosis by a Brightline-contracted clinician. These facts support Plaintiff's claims under the Federal Employers' Liability Act (FELA) and the Family and Medical Leave Act (FMLA) and rebut Defendants' argument that Plaintiff was not placed in physical danger.

- **Exhibit 4 – FRA Civil Penalties Summary (2019–2024):**

  An itemized list of ten enforcement actions issued by the Federal Railroad Administration against Brightline for violations of federal rail safety rules, including post-accident drug and alcohol testing failures (Part 219), signal inspection violations

(Part 236), crossing safety defects (Part 234), and accident reporting failures (Part 225). These documented violations support Plaintiff's allegation that Brightline maintained unsafe and unlawful safety practices, and further call into question the credibility of Defendants' declarations regarding compliance.

# I. FELA COVERAGE AND BRIGHTLINE'S RAILROAD STATUS

4. FELA applies to any common carrier by railroad engaged in commerce. 45 U.S.C. § 51.
5. Brightline operates an intercity passenger railroad over fixed tracks, transporting passengers for compensation. It holds itself out to the public and is federally regulated.
6. In *FRA-2022-0098-0021*, Brightline's VP of Operations described the corridor as "Freight / Passenger / Mixed." Brightline listed itself as both a host and tenant on shared infrastructure with FECR and SFRTA.
7. This contradicts Lefevre's affidavit in support of dismissal and precludes a 12(b)(1) dismissal without discovery. See *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).
8. Brightline is regulated by FRA, NMB, and the U.S. Coast Guard and has received federal grants, including CRISI funding.

9. Its PTC system was certified by FRA as a "mixed" system due to freight interoperability. FRA documents confirm these facts. See *Bell v. Hood*, 327 U.S. 678, 682 (1946).

10. Brightline described itself to the FRA as "the only privately owned and operated intercity passenger railroad in the United States."

11. Brightline operates on infrastructure that serves both freight and passenger trains. According to FRA PTC records and a December 2, 2025 letter signed by Brightline VP Michael Lefevre (Exhibit 1), the corridor is classified as "Freight, Passenger, Mixed." Brightline shares its route with Florida East Coast Railway (FECR), which runs daily interstate freight, and the South Florida Regional Transportation Authority (SFRTA), which operates Tri-Rail commuter service. This shared use places Brightline within the scope of the Federal Employers' Liability Act (FELA), regardless of whether its own trains cross state lines.

12. The purpose of FELA is to prevent railroads from avoiding liability through geographic formalities or corporate structuring.

13. Brightline fits squarely within FELA's broad reach, including its shared-use infrastructure and federal oversight.

## II. STATE LAW CONFIRMATION OF MIXED OPERATIONS

14. Florida House Bill 867 defines the Coastal Link Corridor as a jointly operated rail corridor shared by Brightline, FECR, and SFRTA.

4

15. It expressly identifies Brightline as a participant in shared-use commuter and intercity passenger operations, with legal liability shared among operators.

16. This state-level codification further defeats Brightline's claim that it is a self-contained, intrastate-only operator exempt from federal railroad laws.

17. Defendants argue that Brightline is exempt from FELA as an "urban rapid transit system." However, Brightline is not a local commuter or streetcar system. It is a high-speed, intercity passenger railroad operating between multiple cities, and it shares infrastructure with interstate freight carriers. Brightline is not exempt from FELA under this narrow transit exception.

## III. STB DECISION IS OUTDATED

17. Brightline cites a 2012 Surface Transportation Board decision to argue it is not subject to STB regulation.

18. That decision was based on pre-operational plans and does not reflect Brightline's current operations.

19. Today, Brightline operates on freight rail infrastructure and complies with FRA and NMB oversight.

# IV. PLAINTIFF'S FELA NEGLIGENCE CLAIM

20. Plaintiff worked as a Brightline conductor and witnessed repeated traumatic fatal accidents involving pedestrians and vehicles.

21. Brightline failed to follow FRA recommendations for sealed corridors and did not implement critical incident relief protocols.

22. Brightline's fatality rate per mile was the highest in the nation, according to media and regulatory sources.

23. Plaintiff was not offered mental health support or appropriate relief after these incidents, violating 49 C.F.R. Part 272.

24. Brightline's failure to act on known hazards caused Plaintiff's psychological trauma and injury.

25. Under the Supreme Court's holding in Consolidated Rail Corp. v. Gottshall, 512 U.S. 532 (1994), a railroad worker may recover for emotional injuries caused by exposure to the zone of danger. In multiple fatal incidents, Plaintiff was ordered to walk active tracks through fire, debris, and human remains. In one incident, a second Brightline train was cleared to pass while first responders were still working in the right-of-way. These traumatic exposures placed Plaintiff in physical danger and support recovery under FELA for emotional injury.

## V. FORTRESS'S LIABILITY UNDER FELA

26. Fortress Investment Group LLC is Brightline's parent company and controlled key operations, funding decisions, and safety policies.

27. FECR's 2025 lawsuit against Brightline alleged that Fortress's financial decisions undermined safety across the corridor.

28. Courts have held that parent companies controlling railroad operations can be held liable under FELA. See *Sinkler v. Missouri Pac. R.R.*, 356 U.S. 326 (1958).

29. Plaintiff plausibly alleges that Fortress was an integrated employer or de facto carrier and should be jointly liable.

## VI. FMLA CLAIMS

30. Plaintiff sought leave under FMLA in September 2023 due to PTSD. Brightline failed to process or approve the leave and subjected Plaintiff to retaliation.

31. FMLA provides a three-year statute of limitations for willful violations. See 29 U.S.C. § 2617(c)(2).

32. Plaintiff alleges that Brightline denied his request for medical leave under the Family and Medical Leave Act (FMLA), retaliated against him for seeking PTSD treatment, and discouraged further attempts. After submitting an FMLA request, Plaintiff was met with hostility and misinformation, in violation of 29 U.S.C. § 2615. This satisfies the

"materially adverse" standard for FMLA retaliation under Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

33. Plaintiff has alleged deliberate interference and retaliation, including Brightline's refusal to approve FMLA leave, misrepresenting eligibility requirements, subjecting Plaintiff to intimidation, and discouraging him from seeking further mental health treatment. These actions meet the threshold for retaliation under FMLA, as they would dissuade a reasonable employee from exercising their rights. See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006).

34. Retaliation claims under the FMLA require only that a reasonable employee would have been dissuaded from exercising their rights. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

35. Plaintiff plausibly states both FMLA interference and retaliation claims. Dismissal is not warranted.

## VII. RULE 8 / REQUEST TO AMEND IF NECESSARY

35. Plaintiff's complaint is detailed due to the complexity and severity of the factual background.

36. It provides adequate notice to Defendants and supports each claim with clear, factual allegations.

37. If the Court finds any pleading deficiencies, Plaintiff respectfully requests leave to amend under Fed. R. Civ. P. 15(a)(2). Plaintiff can provide additional facts regarding FRA safety

8

violations (Parts 219, 225, and 236), Brightline's failure to comply with 49 C.F.R. Part 272, the National Mediation Board's classification of Brightline as a rail carrier, and additional post-incident safety failures.

# CONCLUSION

38. Brightline's operations qualify it as a railroad under FELA, and the factual record contradicts the basis of the Motion to Dismiss.

39. Plaintiff's Complaint states valid claims under both FELA and FMLA and should proceed to discovery.

40. Defendants' motion depends on factual assertions that are disputed by their own regulatory filings.

41. Therefore, Plaintiff respectfully requests that the Court DENY the Motion to Dismiss in its entirety.

42. Plaintiff was not merely a witness to post-collision trauma; he was physically exposed to danger as a direct result of Defendants' negligent protocols. Following fatal train strikes, Brightline required Plaintiff to walk on active rail tracks amid burning vehicle debris, unsecured wreckage, and biohazard conditions including human remains before the scene was secured by emergency services. No protective equipment, hazard training, or medical oversight was provided. On at least one occasion, Brightline cleared a second train through the crash site while the emergency personnel remained on scene.

43. FRA enforcement records confirm Brightline was cited and fined for serious safety violations, including four separate failures to conduct required post-accident drug and alcohol testing under 49 C.F.R. Part 219 between 2023 and 2024. Additionally, in 2020, Brightline was fined $29,192 in FRA Case No. BLF 2020-001(SI) for failing to inspect and maintain its signal and train control systems in violation of 49 C.F.R. Part 236. These federal violations constitute **"negligence per se"** under FELA and support Plaintiff's claims that Brightline maintained unsafe and unlawful post-incident procedures.

44. These violations occurred in the context of fatal train strikes, where Brightline had a legal duty to follow safety protocols. The company's repeated failures to test, inspect, or protect crew members directly contributed to the danger Plaintiff faced and corroborate his exposure to risk. These facts place Plaintiff within FELA's zone of danger and support the claim for emotional injury resulting from Brightline's negligence.

45. Defendants rely on the sworn declaration of Michael Lefevre, which claims: "Brightline does not connect with any other passenger railroad or otherwise provide passenger service that crosses state lines." This statement is false. Brightline shares track and platform access at Miami Central Station with the South Florida Regional Transportation Authority (SFRTA), which operates Tri-Rail commuter trains via the Port Lead. FRA filings confirm that Brightline operates on a shared-use corridor designated as "Freight, Passenger, Mixed." Lefevre's affidavit also omits Brightline's extensive enforcement history. From 2019 through 2024, the FRA issued **at least ten civil penalties** against Brightline, including four violations of 49 C.F.R. Part 219 (failure to conduct post-accident testing), three violations under Part 234 (deficient grade crossing safety), two under Part 236 (signal and train control defects), and one under Part 225 (incident

10

reporting failure). These violations demonstrate a sustained failure to comply with critical federal safety standards and undermine the credibility of Lefevre's sworn statements. The affidavit should be disregarded under Rule 56(c)(4) as it conflicts with FRA records and lacks evidentiary reliability.

46. In 2020, Brightline was cited by the FRA in Case No. BLF 2020-001(SI) and fined $29,192 for failing to inspect and maintain its train control and signal systems, in violation of 49 C.F.R. Part 236. These systems are essential for operational safety. This fine demonstrates that Brightline failed to meet even basic safety obligations and undercuts any claim that it was in full regulatory compliance.

47. Brightline has failed to comply with 49 C.F.R. Part 272, which requires railroads to maintain a Critical Incident Stress Plan and provide relief and counseling to employees involved in traumatic incidents. Plaintiff and others were not relieved from duty, received no counseling, and were pressured to resume operations within hours of witnessing fatalities. This failure to follow mandatory safety protocols supports Plaintiff's FELA emotional injury claim.

48. In November 2024, the National Mediation Board ruled that Brightline is a railroad subject to the Railway Labor Act. See 52 NMB No. 9. Because Brightline used infrastructure improved by federal CRISI grants, it is a rail carrier under 49 U.S.C. § 22905(b). This ruling directly refutes Defendants' repeated assertion that Brightline is not a railroad covered by federal law, and supports federal jurisdiction under FELA.

49. Plaintiff respectfully requests that the Court disregard or strike the Declaration of Michael Lefevre under Fed. R. Civ. P. 56(c)(4). Lefevre's affidavit relies on inaccurate claims about Brightline's safety record and legal status that are contradicted by FRA

penalty records, NMB rulings, and Plaintiff's sworn experience. The affidavit contains conclusions and misstatements, not competent evidence.

DATED: January 23, 2026

Respectfully submitted,

**Darren J. Brown Jr.**

**931 Village Blvd, Suite 905-438**

**West Palm Beach, FL 33409**

(708) 705-3214

DarrenBrown@advantagefc.com

Plaintiff, Pro Se

_____

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 23, 2026, a true and correct copy of the foregoing was served via email upon:

Eric L. Leach, Esq. (eleach@miltonleach.com)

C. Ryan Eslinger, Esq. (reslinger@miltonleach.com)

Milton, Leach, Whitman, D'Andrea, Eslinger, Collins & Close, P.A.

3127 Atlantic Blvd., Jacksonville, FL 32207

_____

Darren J. Brown Jr.