UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

DARREN J. BROWN, JR.,

Plaintiff,

v.

BRIGHTLINE TRAINS FLORIDA LLC, and

FORTRESS INVESTMENT GROUP LLC,

Defendants.

Case No. 9:25-cv-81571-BER

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT FORTRESS INVESTMENT GROUP LLC'S MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff Darren J. Brown, Jr., proceeding pro se, respectfully submits this Response in Opposition to Defendant Fortress Investment Group LLC's Motion to Dismiss Amended Complaint, ECF No. 41.

## I. INTRODUCTION

1. Fortress asks the Court to dismiss Count II by characterizing Plaintiff's claim as an attempt to impose FELA liability on a passive investment company. That is not the pleaded theory. Plaintiff does not allege that Fortress was his direct payroll employer. Plaintiff alleges that Fortress's role exceeded passive ownership and involved enterprise-level governance, financing, management-structure influence, staffing-resource control, safety-resource control, risk-management systems, flow-of-funds restrictions, and operational-support systems that shaped the railroad working conditions under which Plaintiff was injured.

FILED BY _____ D.C.

JUN 2 5 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

2. Fortress's own Motion confirms the theory it is trying to dismiss. Fortress acknowledges that Plaintiff alleges "enterprise level financial and governance control over capital allocation, staffing resources, safety-related expenditures, management structures, flow-of-funds restrictions and risk management systems that shaped the working conditions under which Plaintiff performed his duties." ECF No. 41 at 2. Those are operationally material systems, not bare ownership labels. They concern staffing, safety spending, management structure, funding restrictions, and risk management. Those systems require factual development.

3. Plaintiff does not ask the Court to find Fortress liable at Rule 12. Plaintiff asks the Court to hold that dismissal with prejudice is premature because the Amended Complaint and targeted exhibits identify concrete management, governance, rail-control, safety, staffing, risk-management, employment-policy, and federal-compliance systems that should be examined in discovery.

4. Plaintiff submits Exhibits A through G for a limited purpose: plausibility, public-record context, targeted discovery, and possible leave to amend. Plaintiff does not ask the Court to resolve disputed facts or make final liability findings from the exhibits at the Motion to Dismiss stage.

## II. LEGAL STANDARD AND RULE 12 FRAMEWORK

5. A complaint survives Rule 12(b)(6) when it contains enough factual matter, accepted as true, to state a claim that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-57 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility does not require proof. It requires enough facts to raise a reasonable expectation that discovery will reveal supporting evidence. Twombly, 550 U.S. at 556.

6. Plaintiff is pro se, and pro se pleadings must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

7. Fortress invokes Rule 12(b)(1), but its argument is merits-based. Fortress does not identify a true defect in this Court's power to hear a federal FELA/FMLA case.

2

Fortress argues that Plaintiff has not sufficiently alleged Fortress's relationship to the railroad enterprise. That is a Rule 12(b)(6) issue.

8. This Court already addressed the same type of jurisdictional framing earlier in the case. In ECF No. 29, the Court held that Defendants' FELA-status argument was "based on the merits of the FELA claims," not subject-matter jurisdiction. ECF No. 29 at 7. The same rule should govern Fortress's current Motion.

9. The Court may consider documents referenced in the Amended Complaint and central to Plaintiff's claims without converting the motion into summary judgment, where authenticity is not disputed. See Horsley v. Feldt, 304 F.3d 1125, 1134-35 (11th Cir. 2002); Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005). The Amended Complaint repeatedly references public bond materials, financing disclosures, management arrangements, enterprise-level insurance, and related public documents supporting the Fortress-control allegations. See ECF No. 37 ¶¶ 7-9, 16, 68-71, 79, 109-124, 150-164.

10. Public SEC filings, public Federal Register / Surface Transportation Board notices, and public court records may be considered for the limited purpose of showing the existence and contents of those public records, without accepting disputed factual assertions for their truth. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276-80 (11th Cir. 1999); see also 44 U.S.C. § 1507.

11. If the Court concludes that any exhibit material cannot be considered at Rule 12, Plaintiff respectfully requests that the Court exclude that material for Rule 12 purposes rather than convert the Motion into summary judgment without discovery. Alternatively, Plaintiff requests leave to amend to plead the additional public-record and document-based facts with more specificity.

## III. SUMMARY OF ARGUMENT

12. Fortress's Motion should be denied for four reasons. First, Fortress's Rule 12(b)(1) framing is incorrect because the issue is whether Count II states a plausible FELA-related control theory against Fortress, not whether this Court has jurisdiction over federal FELA and FMLA claims.

13. Second, Fortress mischaracterizes Plaintiff's allegations. Plaintiff does not allege passive ownership alone. Plaintiff alleges enterprise-level control over management, staffing, safety resources, capital allocation, flow-of-funds, risk management, and operational-support systems.

14. Third, the exhibits show that Plaintiff's theory is document-based, not speculative. The exhibits identify specific management agreements, shared-services structures, Fortress governance rights, STB rail-control filings, train-crew policies, FRA/DOT safety-compliance systems, and FECR/FEC Corridor capacity disputes.

15. Fourth, if the Court wants more detail, dismissal with prejudice would still be improper because the key control documents are private intercompany documents in Defendants' possession. At minimum, the Court should allow targeted discovery or dismiss without prejudice with leave to amend.

## IV. EXHIBIT ROADMAP

16. The exhibits are organized by subject and each exhibit answers a different portion of Fortress's Motion:

a. Exhibit A — Bond / enterprise structure / FELA risk / management agreements. Exhibit A shows Fortress-managed funds at the top of the Brightline enterprise, a no-employee Project Owner, Brightline Management personnel structure, FELA risk, rail-liability insurance, and management/shared-services agreements.

b. Exhibit B — SEC Brightline/Fortress governance and transaction-control materials. Exhibit B shows Fortress Funds, Brightline Stockholder control, board/registration/merger/information rights, Permitted Holder, Fortress Stockholder, Change of Control, and Fortress-fund-control language.

c. Exhibit C — SEC AAF Management / centralized-service materials. Exhibit C shows formal management-service, staffing, HR/safety, accounting, and centralized-service structures existed and are concrete discovery targets.

d. Exhibit D — STB / Federal Register rail-control materials. Exhibit D shows Fortress filed an official federal rail-control notice involving Brightline Holdings, Fortress-managed

4

affiliates, DesertXpress, and Brightline Trains, and includes follow-on STB/Federal Register pages concerning Brightline West / DesertXpress common-carrier and interstate-network context.

e. Exhibit E — 2023 Brightline Handbook and Train Crew Guardrails. Exhibit E shows formal HR, SOP, train-crew, critical-incident, mental-health, medical-fitness, FMLA, workers' compensation, and return-to-work policy systems.

f. Exhibit F — Public FRA / Part 219 / Part 40 / post-accident testing materials. Exhibit F shows railroad safety, post-accident testing, DER/MRO/lab/SAP, corrective-action, recordkeeping, employee-notice, and safety-sensitive duty systems are formal regulated systems.

g. Exhibit G — FECR public-court-record / FEC Corridor / JUA / RTC / Fortress materials. Exhibit G shows public litigation has identified Fortress-related corridor, capacity, ownership/control, JUA, RTC modeling, and operational-authority discovery targets.

17. The Court need not decide every factual point raised by the exhibits to deny the Motion. The exhibits serve a simpler Rule 12 function. They show that Plaintiff has identified real documents, real public filings, real regulated safety systems, real train-crew policies, real federal rail-control records, and real corridor-capacity disputes. Those materials make it plausible that discovery may reveal evidence supporting the alleged enterprise-control relationship.

18. Conversely, if Fortress is correct that none of these systems reached Fortress or any Fortress-affiliated control channel, discovery should confirm that. But the Court should not dismiss with prejudice before Plaintiff receives discovery into the very systems Fortress says do not exist.

19. Taken together, the exhibits do not ask the Court to accept a new set of disputed facts. They show why Fortress's early-exit request is premature. Fortress says Plaintiff has not alleged a common-carrier or employer relationship. The exhibit package shows a documented enterprise structure in which management,

5

personnel, safety, insurance, risk, rail-control, train-crew policies, and federal safety compliance are formal systems that require discovery.

20. The cover sheets for Exhibits A through G are designed to make that limited purpose clear. They identify the specific Fortress Motion arguments each exhibit addresses and map the relevant pages. The exhibits should therefore be viewed as a targeted Rule 12 plausibility record, not as a document dump or a premature summary-judgment record.

## V. ARGUMENT

A. Fortress's Rule 12(b)(1) Argument Should Be Rejected Because the Dispute Is Merits-Based.

21. Fortress moves under Rules 12(b)(1) and 12(b)(6), but its argument is that Plaintiff has not sufficiently alleged Fortress was a FELA defendant. That is a merits issue, not a jurisdictional issue. Plaintiff asserts federal claims under FELA and FMLA. This Court has federal-question jurisdiction under 28 U.S.C. § 1331, and FELA separately provides jurisdiction under 45 U.S.C. § 56.

22. The Court already held that the FELA-status dispute is merits-based. ECF No. 29 at 7. Fortress's current Motion follows the same pattern. Fortress does not challenge the Court's power to adjudicate the case; Fortress challenges whether Plaintiff can state and prove a FELA theory against Fortress. The Court should analyze the Motion under Rule 12(b)(6), accept Plaintiff's well-pleaded allegations as true, and deny dismissal unless Plaintiff's control theory is implausible as a matter of law.

23. To the extent the Court treats Fortress's control, employer status, common-carrier relationship, agency, or instrumentality arguments as jurisdictional, Plaintiff respectfully requests limited jurisdictional discovery before dismissal. The documents that matter most — management agreements, shared-services agreements, governance records, delegated-authority materials, approval-rights

6

documents, board/member records, risk-management materials, and Fortress-affiliated control records — are largely within Defendants' possession.

B. Plaintiff Does Not Allege Passive Ownership Alone.

24. Fortress argues that "there are no allegations that Fortress was a common carrier by rail engaged in interstate commerce or employed Plaintiff within the meaning of the FELA." ECF No. 41 at 2-3. But Count II is not based on a simple direct-payroll theory. It is based on enterprise control, agency, instrumentality, and operational control.

25. The Amended Complaint alleges that Fortress exercised ownership, governance, financial oversight, and operational influence through Brightline Holdings LLC, Florida Investment Holdings LLC, Brightline Management LLC, and related entities. ECF No. 37 ¶ 15. It alleges that public financing documents reflect indentures, loan agreements, security documents, management agreements, guaranty arrangements, and flow-of-funds restrictions governing capital allocation, operational funding, reserve accounts, staffing resources, and safety-related expenditures. Id. ¶ 16.

26. The Amended Complaint alleges that Fortress-managed funds and affiliates were positioned at the top of the Brightline enterprise and invested approximately $2.2 billion into the Brightline project. Id. ¶¶ 110-111. It alleges that Brightline Management LLC supplied management and personnel functions, including day-to-day management and operation, financial and accounting management, rail operations, maintenance support, station operations, safety, and security functions. Id. ¶¶ 113-114, 155.

27. The Amended Complaint further alleges that Fortress-affiliated entities participated in enterprise-level decisions concerning capital deployment, financial priorities, management structure, resource allocation, liquidity, reserve funding, and related-party transactions affecting rail operations in this District. Id. ¶ 157. It alleges that the safety environment in which Plaintiff worked — including staffing levels, post-incident response resources, infrastructure investment, risk-management

7

protocols, and operational support systems — was shaped by those enterprise-level financial, management, and operational frameworks. Id. ¶ 158.

28. Those allegations are not bare legal conclusions. They identify specific structures, documents, entities, agreements, controls, and operational-resource categories. Fortress may dispute whether those facts ultimately prove liability, but that dispute requires discovery.

29. The prior dismissal did not hold that Plaintiff could never plead a Fortress-related control theory. The Court dismissed the prior pleading as a shotgun pleading and permitted amendment. Count II now identifies Fortress as the defendant and pleads a specific Fortress theory based on enterprise control, instrumentality, operational agency, management structure, financing control, staffing-resource influence, risk management, and safety-resource allocation. Fortress plainly understands the theory because its Motion attacks it on the merits.

C. Exhibit A Shows Why Fortress's "Passive Investor" Framing Is Too Simple.

30. Exhibit A contains targeted Brightline bond-material excerpts. Those materials directly support Plaintiff's plausibility argument. The organizational chart identifies "Funds managed by an affiliate of Fortress Investment Group LLC" at the top of the Brightline enterprise structure and places those Fortress-managed funds above multiple Brightline holding, management, and operating entities. See Ex. A, A-15 to A-16.

31. The Business section states that Brightline Holdings is the indirect parent of the Borrower and Project Owner, develops, builds, and operates high-speed passenger rail systems in the United States, is primarily owned indirectly by funds managed by an affiliate of Fortress Investment Group, and that Fortress-managed funds and affiliates invested approximately $2.2 billion into the Project. See Ex. A, A-17.

32. The Employees section states that the Project Owner had no employees and that senior management and other personnel were made available through Brightline Management LLC. It also identifies employees allocated to rail operations, onboard staff, maintenance support, station operations, safety and security, guest services,

8

baggage, and train-related labor. See Ex. A, A-18. This disclosure matters because Fortress tries to make the employment and control issue appear simple. The financing materials show a more complex enterprise structure in which personnel, senior management, operations, safety, and support functions were supplied through Brightline Management LLC and affiliates.

33. The Insurance section describes Excess Casualty including Rail Liability coverage for railroad operations, including employee injury, passenger injury, stations, crossings, trespassers, maintenance activities, derailments, and terrorism, with $323,000,000 in coverage. See Ex. A, A-19 to A-20. The Risk Factors section acknowledges that employee personal-injury and occupational-disease claims are subject to FELA. See Ex. A, A-21.

34. The related-party sections identify the Project Owner Management Agreement, Parent Management Agreement, and Master Shared Services Agreement. Those agreements are directly relevant because they concern management, services, staffing, operations, financial/accounting management, shared services, and enterprise support. See Ex. A, A-22 to A-26.

35. Plaintiff does not cite Exhibit A to prove liability now. Plaintiff cites it to show that the control theory is plausible and that the actual management agreements, shared-services agreements, Brightline Management documents, delegated-authority materials, risk-management materials, and enterprise insurance documents should be examined before Fortress is dismissed with prejudice.

36. Exhibit A is the strongest FELA-related exhibit because it ties together four points Fortress tries to separate: enterprise structure, employee injury risk, Brightline Management personnel functions, and operative management/shared-services agreements. The fact that those items appear together in public financing materials makes Plaintiff's discovery request concrete. Plaintiff is not asking to search blindly; he is asking to see the documents the public materials identify by name.

37. Fortress may argue that bond disclosures are investor-facing documents and do not prove day-to-day control. Plaintiff agrees they do not prove final liability. But the

9

question at Rule 12 is plausibility. A bond record that identifies a no-employee Project Owner, Brightline Management personnel, FELA exposure, rail-liability insurance, and management agreements is enough to make discovery into control, staffing, safety resources, and risk management reasonable.

### D. Exhibits B and C Support Governance-Control and Management-Service Discovery.

38. Exhibit B contains targeted SEC/EDGAR Brightline/Fortress governance and transaction-control materials. Part I includes Brightline Holdings DRS/Form S-1 materials concerning Fortress Funds, Brightline Stockholder control, board-designation rights, registration rights, merger rights, information rights, and governance disclosures. See Ex. B.

39. Part II includes SEC Exhibit 10.76, the Membership Interest Purchase Agreement dated September 17, 2018, among Brightline Holdings LLC, DesertXpress Enterprises LLC, and Benny's HoldCo LLC. That agreement includes "Permitted Holder," "Fortress Stockholder," "Change of Control Sale," and Fortress-fund-control language. See Ex. B. The "Permitted Holder" language includes Fortress Investment Group LLC, Fortress affiliates, and investment funds or partnerships managed by them, which directly supports discovery into the actual Fortress-affiliated control structure.

40. Plaintiff recognizes that the SEC Exhibit 10.76 transaction relates to DesertXpress/Brightline West and is not direct proof of Plaintiff's Florida employment injury. Plaintiff cites it for a narrower purpose: Brightline-related public transaction documents used Fortress-affiliated control terminology and governance concepts. That makes Fortress-specific governance discovery plausible rather than speculative.

41. Exhibit C contains targeted SEC AAF Management Agreement and centralized-service materials. It identifies AAF Management / All Aboard Florida Operations Management LLC, management-service arrangements, labor/staffing categories, HR/safety functions, centralized services, and the General Operations, Management and Administrative Services Agreement. See Ex. C.

10

42. Exhibit C does not prove that AAF Management equals Fortress, and Plaintiff does not use it that way. Exhibit C shows that formal management-service and centralized-service systems existed and are proper discovery targets. That matters because Plaintiff's claims involve staffing, HR, safety, post-incident support, operations, accounting, and management services — the same categories that Fortress says are too speculative to support discovery.

43. Exhibits B and C also answer Fortress's argument that Plaintiff has pleaded only remote ownership. Exhibit B supplies the Fortress governance lane: Fortress Funds, Brightline Stockholder rights, Permitted Holder language, Change of Control language, and Fortress-fund-control terminology. Exhibit C supplies the management-services lane: AAF Management, centralized services, labor/staffing categories, HR/safety functions, and management-service agreements. Together, they show why both governance discovery and management-service discovery are needed.

44. Plaintiff is careful not to collapse every affiliate into Fortress. The point is narrower. Public records show that Brightline governance and management were not confined to one simple operating company. Because Fortress seeks dismissal before producing the private documents that define those relationships, the Court should not resolve the control issue from Fortress's formal-entity description alone.

E. Exhibits E and F Show the Safety, HR, Train-Crew, and Post-Incident Systems Were Formal Written Systems.

45. Exhibit E contains targeted original 2023 Brightline Handbook and Train Crew Guardrails pages. The 2023 Brightline Handbook identifies Brightline Holdings LLC d/b/a Brightline and its direct and indirect subsidiaries, including Brightline Management LLC, Brightline Trains Florida LLC, and BLH Capital & Management Services LLC. See Ex. E.

46. The Train Crew Guardrails apply to train-crew roles and include policies concerning critical-incident relief, mental-health provider contact, medical fitness, training, compensation, and return-to-work / safety-sensitive systems. See Ex. E. These

11

materials are relevant because Plaintiff's injury theory involves post-incident response, trauma support, relief from duty, mental-health support, medical fitness, staffing, safety, HR, and return-to-work systems.

47. Plaintiff does not cite Exhibit E as proof that Fortress directly employed him. Plaintiff cites it to show that the relevant HR, train-crew, critical-incident, and post-incident systems were formal written systems requiring discovery into who funded, approved, administered, and enforced them.

48. Exhibit F contains targeted public FRA Enforcement Report, public 49 CFR Part 219, FRA Drug & Alcohol / post-accident toxicological testing program, and public 49 CFR Part 40 materials. These materials show that railroad safety, post-accident testing, drug/alcohol compliance, DER/MRO/lab/SAP communications, employee notice, policy-publication, corrective action, training, recordkeeping, and safety-sensitive duty decisions are formal regulated systems. See Ex. F.

49. Part 40 defines the Designated Employer Representative as an employer-side decision-maker authorized to remove employees from safety-sensitive duties, make required testing/evaluation decisions, and receive test results and communications for the employer. Service agents cannot act as DERs. See Ex. F. Public Part 219 materials also show that railroad policies, employee notices, post-accident toxicological testing, and railroad responsibilities are formal regulated systems. See Ex. F.

50. Plaintiff does not cite Exhibit F to prove Fortress directly employed him or to assert a standalone private right of action under Part 219. Plaintiff cites it to show that safety, post-accident, DER/MRO/lab/SAP, corrective-action, training, recordkeeping, and compliance systems are concrete discovery targets. If additional detail is needed, Plaintiff seeks discovery into Brightline's internal Part 219 compliance program and any parent, affiliate, management-company, shared-services, risk-management, or Fortress-affiliated approval channels connected to those systems.

51. Exhibits E and F are important because they connect the corporate-control theory to Plaintiff's actual injury theory. This case involves train-crew work, critical incidents, trauma response, mental-health relief, medical fitness, post-accident systems, safety-sensitive duties, and return-to-work issues. Those subjects are not informal preferences; they are written company policies and federal railroad-safety systems.

52. That matters under Kelley because the right to control is not limited to who gave a single instruction on a single day. Control may also be shown by who had authority over the policies, budgets, staffing, relief, compliance, and safety systems governing the work. The documents behind those systems are uniquely within Defendants' possession.

F. Exhibit D Shows Fortress's Official Rail-Control History.

53. Exhibit D contains targeted native Federal Register / STB rail-control materials. In a Federal Register notice dated October 11, 2018, the Surface Transportation Board identified the proceeding as "Fortress Investment Group LLC - Continuance in Control Exemption - Central Maine & Quebec Railway US Inc., Ohio River Partners Shareholder LLC, and DesertXpress Enterprises, LLC," STB Docket No. FD 36225. See Ex. D.

54. The notice states that Fortress Investment Group LLC filed a verified notice of exemption for the benefit of Brightline Holdings LLC and Fortress Transportation and Infrastructure Investors LLC, which were managed by Fortress affiliates, to continue in control of DesertXpress after Brightline's acquisition of DesertXpress. The notice also states that Brightline Holdings LLC controlled Brightline Trains LLC, which operated express passenger rail service between Miami and West Palm Beach, Florida. See Ex. D.

55. The notice further states that two other rail carriers subject to STB jurisdiction were managed by Fortress affiliates, and it uses the concepts of rail carriers being owned, controlled, or managed by Fortress, Fortress affiliates, or investment funds/entities managed by Fortress affiliates. See Ex. D. Those categories are

13

directly relevant to discovery into the Fortress-affiliated control structure behind Brightline Holdings, Brightline Management, Brightline Trains, and Brightline Trains Florida.

56. Exhibit D also includes targeted 2023 STB/Federal Register follow-on pages concerning DesertXpress/Brightline West acquisition history, common-carrier passenger rail service, and interstate rail-network/STB jurisdiction context. See Ex. D. Plaintiff does not contend that STB jurisdiction and FELA employer status are identical. Plaintiff cites Exhibit D only to show that Fortress-related rail-control relationships were publicly documented and are proper discovery targets.

G. Exhibit G Supports Targeted Discovery Into Corridor, Capacity, Authority, and Fortress-Related Control Issues.

57. Exhibit G contains targeted public-court-record excerpts from Florida East Coast Railway, LLC v. Brightline Trains Florida LLC, Brightline Florida Holdings LLC, Fortress Investment Group LLC, BL Expansion LLC, MDC Commuter LLC, BRWD Commuter LLC, and PBC Commuter LLC, Case No. 2025-013297-CA-01.

58. FECR names Fortress as a defendant and alleges Fortress-related involvement in the FEC Corridor, passenger-rail rights, JUA / RTC capacity modeling, ownership/control disputes, Coastal Link discussions, and the Brightline Defendants' ability and authority to implement expanded passenger service. See Ex. G.

59. Plaintiff does not ask the Court to accept FECR's allegations as true. Plaintiff cites Exhibit G only as public-record context showing that Fortress-related corridor-capacity, funding, authority, maintenance, ownership/control, and operational-control issues are concrete discovery targets. It also supports the reasonableness of discovery into JUA/RTC capacity, shared infrastructure, dispatch/capacity modeling, safety margins, corridor rights, funding, authority, and intercompany control communications.

60. Exhibits D and G also serve different but complementary purposes. Exhibit D is an official government rail-control record involving Fortress and Brightline-related

entities. Exhibit G is a public litigation record showing that another rail operator has placed Fortress, BFH, the FEC Corridor, JUA restrictions, RTC modeling, capacity, ownership/control, and expanded passenger-service authority into dispute. Plaintiff does not cite FECR's allegations as truth. Plaintiff cites them because they identify specific discovery channels that match the enterprise-control theory.

H. FELA Control and Agency Principles Support Discovery Before Dismissal.

61. FELA is a federal railroad remedial statute and should be liberally construed to accomplish its purpose. Urie v. Thompson, 337 U.S. 163, 180 (1949); Kernan v. American Dredging Co., 355 U.S. 426, 432 (1958); CSX Transp., Inc. v. McBride, 564 U.S. 685, 691-92 (2011). Plaintiff recognizes that FELA requires a legally sufficient relationship between the defendant and the railroad work or employment at issue. Plaintiff is not asking the Court to disregard corporate separateness based on ownership alone.

62. Plaintiff asks the Court to allow discovery because the pleaded facts and exhibits show a complex enterprise structure involving Fortress-managed funds, Brightline Holdings, Brightline Management, Brightline Trains Florida, formal management agreements, shared services, enterprise insurance, STB rail-control filings, SEC control terminology, written train-crew policies, FRA/DOT compliance systems, and FECR corridor-capacity allegations.

63. Kelley v. Southern Pacific Co., 419 U.S. 318 (1974), does not require dismissal. Kelley confirms that FELA employment/control depends on common-law control or the right to control, and recognizes borrowed-servant, dual-servant, and subservant theories. Id. at 324-327. Kelley does not hold that the control question can always be resolved on the pleadings before discovery.

64. Plaintiff does not allege that Fortress had to stand beside him giving daily orders. Plaintiff alleges that the right to control may be exercised or reserved through management agreements, staffing authority, shared-services agreements, budget approvals, risk-management systems, safety-resource controls, handbook-

governed employment systems, FRA/DOT compliance systems, and approval rights over operational conditions.

65. Baker v. Texas & Pacific Railway Co., 359 U.S. 227 (1959), supports Plaintiff's position that FELA employment/control issues are fact-intensive. There, the Supreme Court held that whether the worker was "employed" by the railroad under FELA was an issue of fact. Id. at 228. Davis v. Alexander, 269 U.S. 114 (1925), supports the principle that courts may look beyond formal corporate separation when one company actually controls another and operates both as a single system. Id. at 117.

66. Sinkler v. Missouri Pacific Railroad Co., 356 U.S. 326 (1958), supports an operational-reality approach. Sinkler held that when a railroad employee's injury is caused in whole or in part by others performing operational activities of the railroad, those others may be agents of the railroad under FELA. Id. at 330-331. Linstead v. Chesapeake & Ohio Railway Co., 276 U.S. 28 (1928), further shows that formal payroll labels are not always dispositive. FELA status turns on the real control relationship.

67. These cases do not prove Plaintiff's claim now. They show why dismissal before discovery is premature. Whether Fortress remained a passive investor or crossed into operationally material control is a factual question that should not be resolved from Fortress's characterization of itself.

68. Fortress also argues from formal labels, but the Supreme Court's FELA cases warn against treating labels as dispositive. Baker, Sinkler, Davis, and Linstead all look to the actual relationship and operational function. Here, Plaintiff alleges that the actual relationship cannot be known without the management agreements, shared-services agreements, governance records, approval rights, and compliance records. Those are precisely the kinds of facts that are unavailable to a railroad employee before discovery.

69. The distinction between investor oversight and operational control is therefore the central factual dispute. Fortress wants the Court to assume the answer from the

word "investment." Plaintiff alleges the opposite: that Fortress-affiliated governance, financing, risk, staffing, and management channels materially shaped operating conditions. That dispute should be tested through targeted discovery, not resolved from Fortress's self-description.

I. Fortress's Contractor Cases Are Distinguishable.

70. Fortress relies on cases such as Kelley, Morris, Dominics, Bailey, Brankin, Griffin, and Carey. Those cases do not require dismissal here. Many involved contractor employees and developed evidentiary records. They turned on factual questions about who supervised the plaintiff's work, who controlled daily activities, and what the actual relationship was.

71. Plaintiff is not an outside contractor claiming casual cooperation with a railroad. Plaintiff alleges an integrated Brightline rail enterprise involving a no-employee Project Owner, Brightline Management personnel and management services, shared services, enterprise-level insurance, formal HR and train-crew policies, FRA/DOT safety systems, corridor-capacity systems, and Fortress-managed funds at the top of the financing and governance structure.

72. Fortress's cited cases therefore support, rather than defeat, the need for factual development. If control is the key question, discovery is necessary before dismissal with prejudice. Fortress's own Motion acknowledges that Defendants may later raise common-carrier issues at summary judgment so the Court can address those issues on a full record. ECF No. 41 at 3 n.1. The same logic applies to Fortress's control, agency, and instrumentality arguments.

J. Brightline's Answer and the Discovery Record Confirm the Issues Are Real.

73. Brightline's Answer does not prove Fortress's liability. But it confirms that several structure and railroad-risk allegations are grounded in actual materials. Brightline admitted paragraph 110 of the Amended Complaint; admitted paragraph 111 as phrased while denying Fortress's day-to-day control; admitted paragraphs 112 and 113 as of the date of the referenced materials; and admitted paragraph 115. See ECF No. 40. Those admissions matter because they show Plaintiff's bond-structure

17

allegations are not fabricated. Defendants dispute legal effect, not the existence of the underlying structure.

74. Brightline also admitted that it must comply with applicable FRA regulations, that pedestrian and motor-vehicle accidents are an inherent operational risk for a passenger railroad, and that fatalities have occurred involving Brightline passenger trains. See ECF No. 40 ¶¶ 63, 69, 82. These admissions support discovery into the systems that responded to those known risks: staffing, post-incident relief, safety resources, risk management, insurance, HR, mental-health response, FRA/DOT compliance, handbook-governed employment policies, corridor capacity, infrastructure funding, and operational support.

75. Plaintiff already sought discovery into Fortress-related facts. Plaintiff's March 12, 2026 Request for Production requested communications between Brightline, Fortress, and Mubadala concerning rail collisions or fatalities, safety risks, regulatory compliance, and operational policies. The May 14, 2026 Status Report, ECF No. 35, acknowledged that Plaintiff had propounded Requests for Production and stated that Defendants would respond after the Court determined whether Plaintiff stated a claim. Plaintiff cites that procedural history to show that the relevant facts are largely in Defendants' possession and that Plaintiff has already sought targeted discovery.

76. The discovery needed is specific, not unlimited. Plaintiff seeks discovery into the Project Owner Management Agreement, Parent Management Agreement, Master Shared Services Agreement, Brightline Management operating/governance documents, Fortress-affiliated approval-rights documents, delegated-authority materials, board/member records, risk-management materials, enterprise insurance documents, HR/FMLA administration, safety budgets, staffing-resource documents, critical-incident response, FRA/DOT compliance systems, DER/MRO/lab/SAP communications, FECR/JUA/RTC capacity materials, and Brightline/Fortress/Mubadala communications concerning safety, funding, staffing, risk, and operational policies.

18

77. This is especially important because Fortress seeks dismissal with prejudice before any production of the private agreements named in the public bond materials. If the Project Owner Management Agreement, Parent Management Agreement, Master Shared Services Agreement, Brightline Management operating documents, or Fortress-affiliated governance documents contain no relevant control rights, Fortress can rely on them later. But if they show approval authority over staffing, safety resources, risk management, insurance, budgets, or operations, they may materially affect the FELA control analysis. The Court should not assume the answer before those documents are produced.

78. The same is true for the federal safety and post-incident systems. Exhibit E shows written train-crew and critical-incident policies, while Exhibit F shows the public FRA/DOT framework governing railroad drug/alcohol, post-accident testing, DER/MRO/lab/SAP, and safety-sensitive duty decisions. Those systems necessarily involve employer-side decision-makers, records, policies, training, and compliance responsibilities. Plaintiff seeks discovery into who controlled those systems, not a ruling that the regulations themselves create liability against Fortress.

79. The pleadings therefore give Fortress fair notice. Fortress knows the challenged systems: governance, financing, management, staffing, safety resources, risk management, insurance, HR, post-incident relief, FRA/DOT compliance, and corridor capacity. It knows the documents Plaintiff seeks: management agreements, shared-services agreements, STB filings, SEC governance materials, handbook/guardrails policies, FRA/DOT compliance records, FECR/JUA/RTC materials, and Brightline/Fortress/Mubadala communications. That is more than enough for Rule 8 and Rule 12.

80. The requested discovery is proportional to the issue Fortress placed before the Court. Plaintiff does not seek all Fortress investment records or all Brightline business records. Plaintiff seeks the documents that can prove or disprove the specific allegations Fortress attacks: management agreements, shared-services agreements, approval rights, delegated authority, staffing resources, safety

budgets, risk-management channels, insurance/risk materials, FRA/DOT compliance oversight, train-crew policy administration, critical-incident response, JUA/RTC capacity modeling, and communications among Brightline, Fortress, and Mubadala concerning safety and operations.

81. If those documents show Fortress was only a passive investor, Fortress will have a strong summary-judgment record. But if those documents show operationally material control or reserved authority over the systems that shaped Plaintiff's work environment, dismissal now would be wrong. Rule 12 is not the stage to choose between those factual possibilities.

82. Plaintiff's discovery request is also directly tied to the defenses Fortress raises. Fortress says there is no common-carrier or employer allegation against it. Discovery into STB rail-control records, Brightline/Fortress governance records, and the identities of Fortress-managed funds and affiliates answers that issue. Fortress says there is no right-to-control allegation. Discovery into management agreements, shared-services agreements, delegated-authority matrices, budget approvals, safety-resource approvals, and risk-management channels answers that issue. Fortress says the allegations are conclusory. The exhibit package identifies the documents and systems that would prove or disprove the allegations.

83. Plaintiff cannot reasonably be expected, before discovery, to plead the internal approval chains, board votes, delegated-authority matrices, intercompany service protocols, insurance/risk-management communications, DER oversight channels, or JUA/RTC capacity communications that Defendants control. Rule 8 does not require a pro se railroad employee to plead the contents of private intercompany documents that the defendants have not produced.

## VI. ALTERNATIVE RELIEF: IF THE COURT FINDS A PLEADING DEFICIENCY, DISMISSAL SHOULD BE WITHOUT PREJUDICE.

84. If the Court concludes that Count II requires more specificity, Plaintiff respectfully requests that dismissal be without prejudice. Rule 15(a)(2) states that leave to amend should be freely given when justice requires. Foman v. Davis, 371 U.S. 178,

182 (1962). The Supreme Court has also made clear that federal pleading is not a technical game where a plaintiff loses despite pleading the factual basis for his claim. Johnson v. City of Shelby, 574 U.S. 10, 11-12 (2014).

85. Plaintiff recognizes that the Court previously explained that a request for leave to amend should be made by separate motion with the proposed amended pleading attached. See ECF No. 29 at 5, 9. Therefore, if the Court is inclined to dismiss Count II, Plaintiff asks that dismissal be without prejudice and that he be permitted to file a proper motion for leave to amend.

86. If amendment is required, Plaintiff can plead additional facts concerning Fortress-managed funds, Fortress affiliates, Fortress Stockholders, Permitted Holders, Fortress Transportation and Infrastructure Investors LLC, Foundation Holdco LP, Brightline Holdings LLC, Brightline Management LLC, Brightline Trains LLC, Brightline Trains Florida LLC, BLH Capital & Management Services LLC, Brightline Florida Holdings LLC, Florida East Coast Railway, Florida East Coast Industries, and related entities.

87. Plaintiff can also plead additional facts from the bond materials, SEC materials, STB/Federal Register materials, 2023 Handbook, Train Crew Guardrails, public FRA/DOT materials, FECR public-court-record materials, Rule 7.1 disclosure, Brightline's Answer, The Standard/FMLA materials, and discovery records. Amendment would not be futile because Plaintiff has identified specific documents and systems that bear directly on control, including management agreements, shared services, flow-of-funds restrictions, safety-resource allocation, staffing, rail-liability insurance, HR/FMLA administration, critical-incident relief, mental-health response, DER/MRO/lab/SAP systems, FRA/DOT compliance, corridor-capacity modeling, infrastructure funding, and Fortress-related governance materials.

88. Leave to amend would also be appropriate because Plaintiff has not been allowed discovery into the very documents Fortress says are missing. The Amended Complaint already identifies the theory, and Fortress's Motion shows that Fortress

21

understands it. If the Court wants more factual detail, Plaintiff can add public-record facts and document categories without changing the nature of Count II.

89. The safer course is to deny the Motion or, at minimum, preserve Plaintiff's right to amend after the Court identifies the specific deficiency. A dismissal with prejudice would effectively reward Defendants for holding the key intercompany control documents while arguing that Plaintiff has not pleaded their contents in detail.

90. A 20-page opposition cannot attach or discuss every supporting document in full, which is why the exhibits use targeted excerpts and detailed cover sheets. The cover sheets identify what Fortress argues, what each exhibit shows, and which pages answer which point. That format is intended to assist the Court and reduce burden, while preserving Plaintiff's position that the underlying complete documents should be obtained in discovery if Fortress remains in the case.

91. Fortress will still have every opportunity to challenge Plaintiff's theory after discovery. Denial of the Motion would not impose liability, decide the FELA employer issue, or pierce any corporate veil. It would only allow Plaintiff to test whether the public documents point to actual control or merely to passive investment. That is the ordinary function of discovery when a complaint identifies specific private documents and control systems that bear on a fact-intensive issue.

92. For that reason, the Court can deny the Motion without making any final finding about Fortress's status. The Court need only find that Plaintiff has plausibly alleged a control theory and has identified concrete documents and regulated systems that could support that theory. Plaintiff has met that threshold.

93. The practical question is therefore narrow: should Fortress be dismissed now, with prejudice, before Plaintiff sees the intercompany control documents; or should the case proceed to targeted discovery so the Court can decide the control issue on a real record. The pleaded facts, public records, and exhibits support the second option.

## VII. CONCLUSION

22

94. Fortress's Motion should be denied. Fortress asks the Court to decide a fact-intensive control issue before discovery. At this stage, Plaintiff does not need to prove final liability. Plaintiff needs to plausibly allege more than passive ownership and identify discovery-worthy control systems. He has done so.

95. Exhibits A through G show that Plaintiff's theory is not speculative. The exhibits identify concrete public-record, internal-policy, regulatory, and public-court-record materials concerning management, governance, financing, staffing, safety, FELA risk, rail-control, HR policies, critical-incident relief, FRA/DOT compliance, FECR corridor issues, JUA/RTC capacity modeling, and Fortress-related control allegations.

96. Plaintiff respectfully requests that the Court deny Fortress Investment Group LLC's Motion to Dismiss. In the alternative, Plaintiff requests that the Court deny dismissal with prejudice and either allow targeted jurisdictional/control discovery or dismiss without prejudice with leave to file a proper motion to amend.

Respectfully submitted,

Date: June 25, 2026

Darren J. Brown, Jr.

Plaintiff, Pro Se

931 Village Blvd., Suite 905-438

West Palm Beach, Florida 33409

23

Email: darrenbrown@advantagefc.com

Telephone: 708-705-3214

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 25, 2026, I submitted the foregoing Response and Exhibits A-G for filing and am serving a true and correct copy on counsel for Defendants by electronic mail at the following addresses:

Eric L. Leach, Esq.

Counsel for Defendants

ELeach@miltonleach.com

C. Ryan Eslinger, Esq.

Counsel for Defendants

REslinger@miltonleach.com

Amy Austin, Esq.

Counsel for Defendants

AAustin@miltonleach.com

Karen Miller, Paralegal

KMiller@miltonleach.com

Date: June 25, 2026

24