## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

DARREN J. BROWN, JR.,

Plaintiff,

v.

BRIGHTLINE TRAINS FLORIDA LLC, and
FORTRESS INVESTMENT GROUP, LLC,

Defendants.

_____/



Case No.: 9:25-cv-81571-BER

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING DEFENDANT FORTRESS INVESTMENT GROUP, LLC'S MOTION TO DISMISS [ECF NO. 41]

Plaintiff, under S.D. Fla. L.R. 7.8, gives notice of the Railroad Retirement Board's Employer Status Determination, *BCD 2026-28, Brightline Trains Florida LLC, BA No. 1919* (May 15, 2026), attached as Exhibit A. Although issued before Plaintiff's opposition, it came to his attention afterward.

BCD 2026-28 finds Brightline a covered employer under the Railroad Retirement Act and Railroad Unemployment Insurance Act since February 8, 2019, based on CRISI-funded operations. Ex. A at 11. It also states:

> "Brightline is wholly owned by Brightline Holdings LLC, and Brightline Holdings LLC is indirectly owned by investment funds managed by Fortress Investment Group LLC."

Ex. A at 1.

The determination bears on Defendants' contention that Plaintiff was not employed by a common carrier by railroad engaged in interstate commerce, ECF No. 41 at 3 n.1, and

1

reinforces Plaintiff's argument that the pleaded ownership and management structure warrants targeted discovery concerning whether Fortress or related entities exercised legally relevant control, ECF No. 42 at 1-2.

Plaintiff does not contend that BCD 2026-28 independently establishes FELA coverage, an employment relationship with Fortress, or Fortress liability. It is offered for its relevance to the motion's federal-status, plausibility, and discovery issues.

Dated: July 20, 2026

Respectfully submitted,

**Darren J. Brown, Jr.**
Plaintiff, Pro Se
931 Village Blvd., Suite 905-438
West Palm Beach, Florida 33409
Telephone: (708) 705-3214
Email: DarrenBrown@advantagefc.com

2

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I filed the foregoing *Plaintiff's Notice of Supplemental Authority Regarding Defendant Fortress Investment Group, LLC's Motion to Dismiss [ECF No. 41]*, together with Exhibit A, with the Clerk of the United States District Court for the Southern District of Florida.

I further certify that on the same date, I furnished a true and correct copy of the foregoing Notice and Exhibit A by electronic mail to:

**Eric L. Leach, Esq.**
Counsel for Defendants
Florida Bar No. 745480
ELeach@miltonleach.com

**C. Ryan Eslinger, Esq.**
Counsel for Defendants
Florida Bar No. 634859
REslinger@miltonleach.com

**Amy Austin**
Additional recipient at defense counsel's office
AAustin@miltonleach.com

**Karen Miller**
Additional recipient at defense counsel's office
Kmiller@miltonleach.com

**MILTON, LEACH, WHITMAN, D'ANDREA, ESLINGER, COLLINS & CLOSE, P.A.**
3127 Atlantic Boulevard
Jacksonville, Florida 32207
Telephone: (904) 346-3800

**Darren J. Brown, Jr.**

Plaintiff, Pro Se

Date: July 20, 2026

3

# EXHIBIT A

Railroad Retirement Board

Employer Status Determination BCD 2026-28

Brightline Trains Florida LLC (BA No. 1919)

May 15, 2026

**EMPLOYER STATUS DETERMINATION**
**BCD 2026-28**
**Brightline Trains Florida LLC (Brightline)**
**BA No. 1919**

**May 15, 2026**

This is a determination of the Railroad Retirement Board (Board) concerning the status of Brightline Trains Florida LLC[1] (Brightline) as an employer under the Railroad Retirement Act (RRA) and the Railroad Unemployment Insurance Act (RUIA) (collectively, the Acts). 45 U.S.C. § 231 *et seq.*; 45 U.S.C. § 351 *et seq.*

The issue raised by this case is whether Brightline's acceptance of federal grant money under the Consolidated Rail Infrastructure and Safety Improvements (CRISI) grant program should lead the Board to find that it is a covered employer under the Acts. Brightline argues that its acceptance of the CRISI grants should not cause the Board to find that Brightline is a covered employer under the Acts as employer coverage under the Acts is unconditionally tied to Surface Transportation Board (STB) jurisdiction. Therefore, Brightline argues, the STB's finding that it did not have jurisdiction over Brightline necessarily means that the Board must find that Brightline is not a covered employer under the Acts.

## I.     Facts and Procedural Background

The Board received information regarding Brightline from a variety of sources: Myles Tobin, Brightline's then-General Counsel; Cynthia Bergmann, Brightline's successor Chief Legal Officer; and David Coburn and Terence Hynes, outside legal counsels. Brightline is a passenger rail service in Florida that commenced rail operations on January 13, 2018. As of the date of this decision, Brightline operates passenger rail service connecting Miami, Aventura, Fort Lauderdale, Boca Raton, West Palm Beach, and Orlando, Florida.[2] Brightline is wholly owned by Brightline Holdings LLC, and Brightline Holdings LLC is indirectly owned by investment funds managed by Fortress Investment Group LLC.

Brightline conducts much of its rail operations on 195 miles of right-of-way owned by Florida East Coast Railway LLC (FEC Railway) (B.A. No. 1510), an unaffiliated[3] covered railroad. Brightline leases or holds easements for the remaining 40 miles of right-of-way along State Road 528 between Cocoa and the Orlando Airport from the Florida Department of Transportation, the Central Florida Expressway Authority, and the Greater Orlando Aviation Authority. Brightline provides no services for FEC Railway, although FEC Railway has occasionally transported freight in the form of rail construction materials consigned to Brightline. Brightline also pays a

---

[1] At different times, Brightline has operated under the names Virgin Trains USA Florida LLC, Brightline Trains LLC, All Aboard Florida-Operations LLC, and All Aboard Florida-Operations LLC/All Aboard Florida-Stations LLC.

[2] https://www.gobrightline.com last visited May 4, 2026.

[3] FEC Railway was affiliated with Brightline until June 30, 3017, when it was sold to Grupo Mexico, S.A.B de C.V.

fee to FEC Railway for FEC Railway's employees to perform all maintenance services on the rail line used by both parties. Brightline trains are dispatched by FEC Railway.

Brightline provides no freight service and does not interchange with any railroads. Additionally, Brightline provides no through ticketing with Amtrak (B.A. No. 8301) nor any other interstate rail passenger operator for transportation beyond Florida. In 2012, a majority of the Surface Transportation Board (STB) determined that Brightline is not a railroad subject to the STB's jurisdiction because it operates entirely within the state of Florida and is not part of the interstate rail network. *All Aboard Florida-Operations LLC and All Aboard Florida-Stations-Construction and Operation Exemption-In Miami, Fla, and Orlando, Fla.,* 2012 STB Fin. Dkt. 35680 (Mulvey dissenting[4]).

### A. The Federal Railroad Administration awards multiple Consolidated Rail Infrastructure and Safety Improvements grants to Brightline.

The Federal Railroad Administration (FRA) awarded multiple grants to Brightline under the Consolidated Rail Infrastructure and Safety Improvements (CRISI) grant program, pursuant to section 11301 of the Fixing America's Surface Transportation Act (FAST Act), Pub. L. No. 114-94 (2015). The stated purpose of the CRISI Program is to "invest[] in a wide range of projects within the United States to improve railroad safety, efficiency, and reliability; mitigate congestion at both intercity passenger rail and freight rail chokepoints to support more efficient travel and goods movement; enhance multi-modal connections."[5]

Among the conditions for the use of these federal CRISI funds is the following:

> **(b) Operators deemed rail carriers and employers for certain purposes.** A person that conducts rail operations over rail infrastructure constructed or improved with funding provided in whole or in part in a grant made under this chapter **shall be considered a rail carrier** as defined in section 10102(5) of this title for purposes of this title **and any other statute that adopts that definition or in which that definition applies, including—**
>
> (1) **the Railroad Retirement Act of 1974** (45 U.S.C. 231 *et seq.);*
> (2) the Railway Labor Act (45 U.S.C. 151 *et seq.*); and
> (3) **the Railroad Unemployment Insurance Act** (45 U.S.C. 351 *et seq.).*

49 U.S.C. § 22905(b) (emphasis added).

---

[4] The STB's dissenting opinion argued that Brightline should be found to be within the STB's jurisdiction due to being in the general system of rail transportation and its relation to the movement of passengers in interstate commerce through its connections to the Orlando airport and cruises at ports in West Palm Beach, Fort Lauderdale, and Miami, Florida.

[5] Https://www.transportation.gov/rural/grant-toolkit/consolidated-rail-infrastructure-safety-improvements-crisi-grant-program last visited May 4, 2026.

The FRA first awarded Brightline a CRISI grant in 2019[6] for installation of supplemental safety features at railroad grade crossings between West Palm Beach and Miami, Florida. The FRA awarded Brightline an additional CRISI grant in 2020 through the City of Boca Raton. The 2020 CRISI grant was originally awarded to the City of Boca Raton for construction of a Brightline rail station and parking garage. Brightline was reimbursed a portion of the federal funds for the purpose of constructing the station, west side platform, and related track improvements and has substantially completed such project. The FRA subsequently awarded Brightline additional CRISI grants in 2021 and 2023. The amount of the grant awards ranged from 1.6 million to 16 million dollars each.

### B. The National Mediation Board's analysis of Brightline's status.

On November 12, 2024, the National Mediation Board (NMB) issued a decision reviewing whether Brightline was subject to the Railway Labor Act (RLA) due to its acceptance of the CRISI grants after an application filed by the Transport Workers Union of America (TWU) alleging a representation dispute with Brightline pursuant to the RLA raised the issue of RLA jurisdiction. Brightline disputed that the CRISI grant language conferred RLA jurisdiction. Brightline argued to the NMB that the CRISI grant language should be interpreted only to deem the grant recipient a rail carrier under the ICC Termination Act of 1995 (ICCTA) but nothing more if that rail carrier was also not subject to STB jurisdiction. *Brightline Trains Florida LLC*, 52 N.M.B. No. 9, 47-8 (2024).

The NMB disagreed with Brightline's arguments and found Brightline to be a carrier subject to the RLA due to its acceptance of the CRISI grant funds. The NMB rejected Brightline's request to refer the decision back to the STB for an additional determination of jurisdiction, stating "it is unnecessary to determine whether Brightline is under the jurisdiction of the STB." *Id.* at 48 n.7. The NMB determined that Brightline is a carrier that conducts rail operations over infrastructure improved by CRISI grant funding. The NMB found that Congress expressly intended to impose obligations not only of the ICCTA, but of the RLA and other laws on recipients of the CRISI grants. *Id.* at 48-9.

The NMB found that it was very unlikely that Congress would adopt this specific language in the CRISI legislation if it did not intend to expand RLA jurisdiction to additional railroads that were not already under RLA jurisdiction. *Id.* at 49. The NMB found it significant that the CRISI grant section is entitled "Operators Deemed Rail Carriers *and Employers* for Certain Purposes." 49 U.S.C. § 22905(b) (emphasis added). The NMB stated "[t]his language ["Employers"] further indicates that Congress intended to do more than define rail carrier as it is already defined in the RLA and the other statutes listed in that section. If Brightline's interpretation is correct, receiving the grant would have no impact on Brightline's legal obligations as an employer or carrier, which is inconsistent with the language of the statute." *Brightline*, at 49. Therefore, the NMB found that by accepting the CRISI funds, Brightline was deemed subject to the RLA whether or not the STB found Brightline subject to its jurisdiction.

---

[6] Brightline confirmed receipt of the 2019 grant funds and the completion of the project.

3

The NMB in its decision specifically noted the similarities in the analysis of the issues under the RLA and the Acts, stating, "[u]nder Brightline's interpretation, a railroad receiving a CRISI grant would still be [sic] need to be part of the interstate rail network to be under STB jurisdiction and considered a carrier under the RLA. **Both the Railroad Retirement Act (RRA) and the Railroad Unemployment Insurance Act (RUIA) define an employer as a rail carrier subject to STB jurisdiction so the analysis would be the same under those statutes.**" *Id.* at 48 (emphasis added).

### C.  District Court review of the NMB's determination.

Brightline filed an action in the United States District Court for the Southern District of Florida on December 4, 2024, seeking to set aside the NMB's determination that Brightline qualified as a carrier under the RLA due to its acceptance of the CRISI grants.[7] Brightline argued that it was not subject to the RLA because it was not subject to the STB's jurisdiction. Brightline also argued that the CRISI grants simply further defined who qualifies as a section 10102(5) rail carrier for purposes of STB jurisdiction. *Brightline Trains Fla. LLC. v. Nat'l Mediation Bd.*, No. 24-CV-24734, 2026 U.S. Dist. LEXIS 69250 (S.D. Fl. Mar. 31, 2026).

The court upheld the NMB's decision on March 31, 2026.[8] The court found that Brightline is not excluded from the NMB's jurisdiction merely because it is not subject to the jurisdiction of the STB. The court explained that the RLA does not define carriers solely as railroad companies subject to the STB but rather that the RLA states that "carrier" includes any railroad subject to the jurisdiction of the STB. The court found that the word "includes," in addition to the exclusion of certain entities from the definition of carrier, implies that entities such as Brightline are not excluded from the definition of a carrier even though Brightline is not subject to the STB's jurisdiction. *Brightline*, 2026 U.S. Dist. LEXIS 69250 at *7-8.

The court also found specifically that Brightline is a carrier subject to the RLA because it conducted operations over rail infrastructure constructed and improved with federal CRISI funds. *Brightline,* 2026 U.S. Dist. LEXIS 69250 at *9-13. The court stated that there was no dispute that Brightline operated over rail infrastructure that was constructed and improved with CRISI grants. *Brightline,* 2026 U.S. Dist. LEXIS 69250 at *10. The court noted that Congress specifically added the language regarding the RLA and the Acts to the CRISI grants. *Brightline,* 2026 U.S. Dist. LEXIS 69250 at *11. The court also noted that it is a cardinal rule of statutory construction to construe a statute to avoid superfluous verbiage. *Brightline,* 2026 U.S. Dist. LEXIS 69250 at *12. The court explained, "if § 22905(b) does not bring those operating on railways and infrastructure improved by CRISI grants under the purview of federal railway laws, then being deemed a rail carrier through the CRISI program would carry little significance overall." *Brightline,* 2026 U.S. Dist. LEXIS 69250 at *12. Therefore, the court found that it disagreed with Brightline's interpretation of the CRISI language.

---

[7] The TWU intervened in the case.

[8] Brightline has noticed an appeal of this decision to the United States Court of Appeals for the Eleventh Circuit.

4

The court accepted the NMB's opinion that Congress intended Brightline to be subject to the RLA upon accepting the CRISI grant funds. Additionally, in a footnote, the court observed that, "Congress customarily conditions the receipt [*sic*] federal funding with compliance with federal statutes.... Thus, the Court's interpretation of § 22905(b)—that Congress conditioned receiving federal grants to improve railway infrastructure with the recipient's compliance with federal railway laws—is both logical and aligned with customary Congressional practice." *Brightline*, 2026 U.S. Dist. LEXIS 69250 at *11 n.3.

### D. The Federal Railroad Administration's analysis of Brightline's status under the Acts.

According to Brightline, the FRA has stated that Brightline's acceptance of the CRISI grants should not cause the Board to find that Brightline is a covered employer. In support of this claim, Brightline submitted an email to the Board from an FRA Project Manager. Brightline alleged that this e-mail demonstrated that the FRA does not consider the language in the CRISI grants to be related to Brightline's employer status under the Acts.

The FRA's Project Manager's July 28, 2020 e-mail stated:

> FRA has reviewed the issue regarding the [CRISI grant] language . . . and has determined that the language does not constitute an affirmative requirement that a grantee participate in the RRA, RRUIA [*sic*], or RLA if that railroad is not otherwise required to by applicable law. The [CRISI grant] language is meant to notify grantees that these laws also use the definition of "rail carrier" in 10102(5) and to serve as notice to grantees that compliance with these acts is a requirement for CRISI funding if the grantee is required to participate. In this case, it has been determined that Brightline is NOT required by law to participate and [*sic*] remain eligible for CRISI 2017 grant funding.

The RRB requested the FRA to review its employee's statement and provide feedback regarding whether this was the FRA's official interpretation of the effect of 49 U.S.C. § 22905(b) on grant recipients. In response, the Assistant Chief Counsel of the FRA[9] stated on June 4, 2025:

> FRA has not published guidance on section 22905(b) because FRA understands 49 U.S.C. § 22905(b) to operate as a matter of law. FRA includes language from 49 U.S.C. § 22905(b) in its grant agreement terms and conditions to ensure FRA grantees are aware of the legal provision. It is other agencies, including the National Mediation Board (NMB) and RRB, that determine the jurisdiction of the laws listed at section 22905(b): the Railroad Retirement Act of 1974, the Railway Labor Act, and the Railroad Unemployment Insurance Act (together "the Acts").
>
> * * *
>
> FRA's 2020 response to Brightline was not intended as a general policy statement on section 22905(b) requirements, rather the response was project-specific and

---

[9] Casey Mendez Symington.

5

addressed Brightline's ability to remain eligible for CRISI 2017 grant funding. In summary, the 2020 correspondence between FRA staff and Brightline does not reflect a position regarding interpretation of section 22905(b) requirements for other projects or recipients.

In this same response, the FRA also pointed the RRB to the NMB's decision finding Brightline to be subject to the RLA due to Brightline's acceptance of the CRISI grants.

The Board has also reviewed a letter from the FRA's Chief Counsel[10] dated June 26, 2025, addressed to the TWU with copies sent to Brightline and the STB on this same subject. The Chief Counsel stated that the FRA "takes no exception to NMB's decision and analysis of Brightline's position. . . . FRA expects that Brightline Florida understands its obligations under Federal law and FRA's grant agreements, and that the railroad acts accordingly." On August 15, 2025, Brightline responded to the substance of the FRA's email and letter in a similar manner to its previous arguments.

## II.  Analysis

Brightline argues that the employer coverage definition under the Acts is tied to STB jurisdiction under 49 U.S.C. § 10501(2) and not to "rail carrier" status under 49 U.S.C. § 10102(5), which is the specific provision cited in 49 U.S.C. § 22905(b) governing the CRISI grant program. Brightline, therefore, argues that it is not a covered employer under the Acts because the STB previously found that it does not have jurisdiction over Brightline.

### A. Effect of the STB's determination regarding Brightline.

The RRA defines an "employer" as "any carrier by railroad subject to the jurisdiction of the Surface Transportation Board under part A of Subtitle IV of title 49, United States Code." 45 U.S.C. § 231(a)(1)(i). Section 1 of the RUIA contains essentially the same definition. 45 U.S.C. § 351. The Board notes, however, that the only sections of the Acts in which the STB has the conclusive authority to determine whether a company will be considered to be a covered employer are section 1(a)(2)(ii) of the RRA and section 1(a) of the RUIA concerning lines operated by electric power. 45 U.S.C. §§ 231(a)(2)(ii), 351(a). This section in the RRA states, "[t]he [STB] is hereby authorized and directed upon request of the [RRB], or upon complaint of any party interested, to determine after a hearing whether any line operated by electric power falls within the terms of this paragraph." 45 U.S.C. § 231(a)(2)(ii). RRB regulations similarly allow that if an employer disagrees with a determination by RRB staff that a company is a covered electric railway, RRB staff will submit the matter to the STB for determination rather than to the Board. 20 C.F.R. § 202.13(b). Brightline is not a railway operated by electric power.

Section 12(l) of the RUIA grants to the Board "all powers and duties necessary to administer or incidental to administering this Act." 45 U.S.C. § 362(l); *see also*, 45 U.S.C. § 231f(b). The power to determine whether a company must file a return of compensation under section 9 of the RRA and section 6 of the RUIA, or to decide the entitlement of a claimant for benefits under either Act based on service to a covered employer, is at least incidental to administration of these

---

[10] Kyle Fields.

sections. 45 U.S.C. §§ 231h, 356. Section 8(k) of the RUIA confers upon the Board, with respect to assessment and collection of contributions under the RUIA, the authority vested in the United States to collect taxes under the Railroad Retirement Tax Act (with the exception of instituting criminal proceedings). 45 U.S.C. § 358. Accordingly, while the Board considers any decision of the STB with respect to the status of a particular company as a rail carrier subject to Part A of subtitle IV of title 49, United States Code, the Board clearly has independent authority to determine the status of an entity as an employer under the Acts it administers.[11] *See, e.g., Am. Orient Express Ry. LLC*, B.C.D. 06-15.2 (Apr. 18, 2006) (Kever dissenting) (dissenting opinion held that Board should not find railroad to be covered, despite STB's decision that railroad was subject to its jurisdiction, because the STB's analysis was flawed).

In *H&M International*, the Board opined that although inconsistency in decisions among Federal agencies determining similar questions would create an undesirable image of unfairness and conflict within the government, the STB's decision that it does not have jurisdiction over a railroad does not prevent an independent determination by the Board regarding the status of that same railroad as an employer under the Acts. *H&M International, Inc.*, B.C.D. 04-22 at 3-4 (Apr. 21, 2004). The Board explained its position stating, "[t]his is not to say that the Board should disregard the decisions of other Federal agencies addressing the same legal issues of coverage with respect to a particular company." B.C.D. 04-22 at 3. The Board went on to acknowledge "that a decision by the STB regarding the status of a company as a rail carrier, while it cannot relieve the Board of its duties under the Acts it administers, must be weighed in a decision by the Board on the same matter." B.C.D. 04-22 at 3.

Additionally, although 49 U.S.C. § 10501(c)(2) regarding the STB's jurisdiction generally exempts public transportation provided by a local government authority from that jurisdiction, the Board has long recognized that it may exercise authority over such entities notwithstanding, when that local government authority actually operates a railroad. 49 U.S.C. § 10501(c)(3)(A)(iii) states:

> (A) Notwithstanding paragraph (2) of this subsection, a local governmental authority, described in paragraph (2), is subject to applicable laws of the United States related to—
>
> * * *
>
>> (iii) employment, retirement, annuity, and unemployment systems or other provisions related to dealings between employees and employers.

For example, in *Massachusetts Bay Transportation Authority – Employer Status*, U.S. R.R. Ret. Brd. Gen. Couns. Op. L-90-160, (Oct. 31, 1990), the Board's General Counsel explained the Board's understanding of this statutory language to mean that local government authorities operating railroads may be subject to the Acts despite not being subject to ICC jurisdiction (the

---

[11] Although discussing affiliate coverage rather than coverage as a carrier, *R.R. Ret. Bd. v. Duquesne Warehouse Co.*, 326 U.S. 446, 452 (1946) demonstrates that the Board has historically maintained that the purpose of the Acts was to be inclusive and that the Board was not restricted in its determinations of "employers" in the Acts only to activity found covered by the STB.

7

STB's predecessor agency). While Brightline is not considered a local government authority under 49 U.S.C. § 10501(c)(2), this exception establishes that STB determinations of jurisdiction are not conclusive for purposes of coverage under the Acts because Congress may make express statutory provisions binding certain entities not covered by the STB to nevertheless be employers under the Acts.

The Board notes that the STB's decision that it lacks jurisdiction over Brightline was made in 2012; therefore, it was made without review of the 2015 CRISI grant language. The Board finds that the STB's decision carries weight in the Board's coverage analysis, but it is not solely determinative of the matter due to the Board's independent authority to decide coverage status.

**B. Effect of the CRISI grant language to make an entity that is otherwise not subject to the STB's jurisdiction a covered "employer" for purposes of the Acts.**

As it argued to the NMB and the district court, Brightline argues here that its acceptance of the CRISI grants should not cause the Board to find that Brightline is a covered employer under the Acts. As noted above, Brightline urges the Board to interpret the CRISI grant conditions as deeming a recipient a rail carrier under 49 U.S.C. § 10102(5) only. 49 U.S.C. § 22905(b). Under Brightline's interpretation, a railroad receiving a CRISI grant would still need to be part of the interstate rail network to be under STB jurisdiction and considered a carrier under the Acts. Brightline argues that it is, therefore, not a covered employer under the Acts because the STB previously found that it does not have jurisdiction over Brightline. *All Aboard Florida-Operations LLC,* 2012 STB Fin. Dkt. 35680. Brightline also argues that the CRISI language is meant solely to serve as notice to grantees that compliance with these Acts is a requirement for CRISI funding if the grantee is already required to participate in the Acts due to being subject to the STB's jurisdiction.

In reviewing Brightline's arguments, the Board first turns to general principles of statutory construction. Brightline asks the Board to ignore the fact that Congress specifically added references to the Acts, as well as to the term of art of "employer," to the CRISI grant conditions. 49 U.S.C. § 22905(b). The Board finds that Brightline's arguments explaining why Congress would include these statutory provisions and terms of art if it did not want rail operators accepting CRISI grants to be part of the railroad retirement system lack merit.

It is axiomatic that "'[t]he cardinal principle of statutory construction is to save and not to destroy.' It is [the adjudicating body's] duty 'to give effect, if possible, to every clause and word of a statute,' rather than to emasculate an entire section, as [the alternative] interpretation requires." *United States v. Menasche,* 348 U.S. 528, 538–539 (1955) (citations omitted). Brightline's arguments, in effect, request that the Board find that Congress added the references to the Acts and the term of art "employer" to the CRISI grant requirements for no reason, as the language in question would otherwise have no purpose. The Board is unwilling to do so.

The Board also finds instructive the legislative history related to the CRISI grant conditions. The Board's review of the legislative history indicates that the grant conditions are tied to Congress's goal of restructuring intercity passenger rail transportation in the U.S. and providing competition

8

for Amtrak, a nationwide intercity railroad and a covered employer. The grant conditions in question were first enacted in the Passenger Rail Investment and Improvement Act of 2008. Pub. L. No. 110-432, Div. B, Title III, § 301(a) (2008). The legislative history of the Passenger Rail Investment and Improvement Act of 2008 begins as far back as 2003. Congress had previously attempted to provide grants for intercity passenger rail operations. The Senate introduced intercity passenger rail service capital assistance grants in a predecessor bill, entitled the Passenger Rail Investment Reform Act, on July 30, 2003. Passenger Rail Investment Reform Act, S. 1501, 108th Cong. (2003). A companion bill of the same name was introduced in the House of Representatives on September 30, 2003. Passenger Rail Investment Reform Act, H.R. 3211, 108th Cong. (2003).

The Passenger Rail Investment Reform Act was never enacted into law as Congress made several more failed attempts to pass various versions.[12] However, as noted above, the Passenger Rail Investment and Improvement Act of 2008 became law on October 16, 2008. Pub. L. No. 110-432 (2008). The CRISI Program was then authorized in 2015 under section 11301 of the FAST Act.

In 2003, the Senate held a hearing to provide information for the Passenger Rail Investment Reform Act. *See* Passenger Rail Investment Reform Act: Hearing Before the S. Comm. on Commerce, Sci., and Transp., 108th Cong. S. Hrg. 108-994, at 63 (2003). This hearing reveals at least one possible reason for Congress's later inclusion of the requirements relating to the Acts in the CRISI grant conditions: Congress may have wanted to guarantee that new intercity carriers challenging Amtrak, that received federal funds, would be responsible for similar employee benefits (including railroad retirement taxes and reporting requirements) to ensure fair competition with Amtrak.

In his response to written questions from Congress in 2003, David L. Gunn, the then-President of Amtrak, explained the idea that fair competition for Amtrak included ensuring that competitors were subject to the same employee benefits mandates, including the Railroad Retirement Act, to which Amtrak was subject. Mr. Gunn explained this concept as follows:

> Response to Written Questions Submitted by Hon. John McCain to David L. Gunn (Amtrak).
>
> > [Senator McCain:] Question 13. In a follow-up question from the full Committee's last hearing on Amtrak, I asked "If Amtrak is able to use its Federal subsidy to cover overhead, how can there be fair and open competition with the private sector?" Your response began with the statement that "The current statutory scheme is not intended to create 'fair and open competition' between Amtrak and private entities that wish to operate selected intercity passenger rail services currently operated by Amtrak."

---

[12] *See* Passenger Rail Investment Reform Act, H.R. 1713, 109th Cong. (2005); Passenger Rail Investment and Improvement Act of 2005, S. 1516, 109th Cong. (2005); Passenger Rail Investment and Improvement Act of 2007, S. 294, 110th Cong. (2007).

9

If other companies [sic] ready, willing, and able to operate intercity service, why should they not be able to compete with Amtrak on a fair and open basis?

[Amtrak:] Answer. As stated in the prior Amtrak response quoted in the question, **a number of statutory changes would be required to create "fair and open competition" between Amtrak and other entities that wish to operate intercity rail passenger service, including:**

- **Making all such entities subject to Railroad Retirement taxes, as Amtrak is; and**

- Giving these entities the same statutory access rights that Amtrak possesses to use tracks and facilities owned by freight railroads and regional transportation authorities.

[Senator McCain:] Question 13a. Is Amtrak opposed to competition?

[Amtrak:] Answer. No.

Passenger Rail Investment Reform Act: Hearing Before the S. Comm. on Commerce, Sci., and Transp., 108th Cong., S. Hrg. 108-994, at 63 (2003) (written response of David L. Gunn, President of Amtrak) (emphasis added).

The fact that the STB majority stated in its 2012 decision that Brightline was not, at that time, subject to its jurisdiction because it was operating entirely within the state of Florida, does not conclusively mean that the Board cannot find Brightline to be a covered employer in this case by virtue of its 2019 acceptance of the CRISI grant. Although Brightline currently only operates within the state of Florida, it is apparent to the Board that the lens through which Congress viewed stand-alone intercity rail service is the same lens that Congress viewed Amtrak, a nationwide rail carrier and a covered employer. Congress specifically included language in the grant conditions for the CRISI funds to place a railroad providing selected intercity rail service on level competitive ground with Amtrak, a covered intercity passenger rail provider. Congress hoped to prevent CRISI grant recipients from cherry picking the most profitable routes from Amtrak, while paying lower wages and lower employee taxes.

Therefore, the Board finds that in light of the specific language of the CRISI grants, Congress purposely inserted the language into the CRISI grants to ensure that entities in receipt of those grants would be covered by the Acts, whether or not the entity is covered by the STB's jurisdiction.

## III.   Conclusion

For these reasons, the Board finds that Brightline is a covered employer under the Acts due to its acceptance of the CRISI grant funds. The Board finds that Brightline's covered status began on

10

February 8, 2019, the first date the CRISI grant funds were awarded to Brightline for rail infrastructure improvement.

Erhard R. Chorlé

John Bragg

Thomas Jayne

11